IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

VENG UNG., et al.,

        Plaintiffs,

  v.                                  Civil Action 2:18-cv-1479
                                        Judge James L. Graham
                                        Magistrate Judge Kimberly A. Jolson

COLUMBUS EXTEND-A-SUITES, et al.,

        Defendants.

## REPORT AND RECOMMENDATION

This is an action for damages incurred by Counterclaim Defendants Columbus Extend-A-Suites ("Extend-A-Suites") against Plaintiffs Veng Ung and 1219 Holdings (collectively, "the Ung Parties").[1] The Undersigned was assigned to issue a report and recommendation on Extend-A-Suites' and Nikon Capital LLC's ("Nikon Capital") Motion for Default Judgment, (Doc. 11). (Doc. 14). The Undersigned directed the parties to submit summary judgment briefs regarding Extend-A-Suites' and Nikon Capital's counterclaims against the Ung Parties. (Doc. 19). For the reasons below, it is **RECOMMENDED** that Defendants' Motion for Default Judgment (Doc. 11) and Extend-A-Suites' and Nikon Capital's Motion for Summary Judgment (Doc. 22) be **GRANTED** in the amount of $1,076,835.07.

**I.    BACKGROUND**

This action arises out of a commercial lease gone wrong. Plaintiff Veng Ung is the sole member of Plaintiff 1219 Holdings, LLC. (Doc. 6, ¶ 1). Defendant Extend-A-Suites owns commercial property located at 887 Morse Road in Columbus, Ohio (the "Property"), and

---

[1] Because Defendant Sterling Resource Management, Inc. was terminated on July 2, 2019, (Doc. 15), and did not file counterclaims against the Ung Parties, it is no longer a party to this action.

Defendant Nikon Capital, LLC is Extend-A-Suites' sole member. (*Id.*, ¶ 2). On October 13, 2017, the Ung Parties entered into a nine-month commercial lease (the "Lease") with Extend-A-Suites, running from November 1, 2017 to July 31, 2018. (*Id.*, ¶ 9). The Ung Parties also paid $63,000.00 for an option to purchase the Property. (*Id.*, ¶ 8). And, in connection with the Lease, the Ung Parties purchased securities from Nikon Capital, from which Extend-A-Suites could collect unpaid rent and expenses. (*Id.*, ¶ 7).

The Ung Parties defaulted on their rent in March 2018. (Doc. 7, ¶ 16). On March 16, 2018, Extend-A-Suites terminated the lease by letter and took immediate possession of the Property pursuant to the terms of the Lease. (*Id.*, ¶¶ 17, 18). The Ung Parties subsequently filed suit against Extend-A-Suites, Nikon Capital, and Sterling Resource Management, Inc., for wrongful eviction. (Doc. 6). Broadly speaking, the Ung Parties allege that Extend-A-Suites improperly evicted them and therefore seek a return of their investment with Nikon Capital. (*See generally* Doc. 6).

Defendants, in their Answer, assert that they already applied the Ung Parties' investment to the unpaid Lease obligations, but that additional money is owed. (Doc. 7, ¶ 12). Also, in their Answer, Extend-A-Suites and Nikon Capital brought counterclaims against the Ung Parties. (*Id.* at 13–17). Their counterclaims fall into two general categories: (1) breach of the Lease; and (2) tortious interference with a contract. (*See id.*). As for the first, Extend-A-Suites seeks $525,835.07 for past-due rent, late fees, expenses, taxes, and attorney's fees owed under the Lease. (*See generally* Doc. 22 at 8). As for the second, Extend-A-Suites alleges that the Ung Parties interfered with its attempts to sell the Property, resulting in damages of $551,000.00. (*Id.*).

Procedurally speaking, this matter has been largely stagnant. Defendants removed this case in November 2018, and the Ung Parties have not responded to the counterclaims or otherwise appeared. On January 18, 2019, the Clerk entered default against the Ung Parties. (Doc. 10).

Defendants Extend-A-Suites, Nikon Capital, and Sterling Resource Management, Inc., then filed a Motion for Default Judgment. (Doc. 11). In July 2019, Judge Graham dismissed all claims against Defendants for want of prosecution. (*See* Docs. 15, 16).

In August 2019, Extend-A-Suites and Nikon Capital notified the Court that they nevertheless intended to pursue their counterclaims against the Ung Parties. (Doc. 18). Accordingly, the Undersigned directed the parties to file summary judgment briefing on these counterclaims. (Doc. 19). Extend-A-Suites and Nikon Capital filed their Motion on October 11, 2019 (Doc. 22), but the Ung Parties failed to respond. This matter is therefore ripe for resolution.

## II. LEGAL STANDARDS

Rule 55(b)(2) governs all cases in which a court enters a default judgment. *Zuffa, L.L.C. v. Holtsberry*, No. 3:12-cv-1191, 2013 WL 183861, at *2 (N.D. Ohio Jan. 17, 2013). Under the Rule, "the defendant is considered to have admitted all of the well-pleaded allegations in the complaint with the exception of the amount of damages owed." *Summa W. Reserve Hosp. v. AssureCare*, No. 5:11 CV 1393, 2012 WL 1361608, at *1 (N.D. Ohio Apr. 19, 2012) (citations omitted). "Therefore, in order to enter default judgment, the Court must determine the amount of damages." *Id*. To do so, it may hold an evidentiary hearing or determine the amount by affidavit or documentary evidence. *Id*. (citing Fed. R. Civ. P. 55(b)). An evidentiary hearing is not required "'if sufficient evidence is submitted to support the request for damages or if the amount claimed is one capable of ascertainment from definite figures in the documentary evidence or affidavits.'" *Ayers v. Receivables Performance Mgmt., LLC*, No. 2:15-cv-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016) (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 271 n.8 (E.D. Pa. 2014)); *see also Servpro Indus., Inc. v. Santoro & Sons Enter., Inc.*, No. 3:15-cv-00608, 2017 WL 1331434, at *1 (M.D. Tenn. Apr. 11, 2017) (holding that a hearing is not

required if moving party submits uncontested, sworn affidavits sufficient to establish damages amount).

As for summary judgment, it is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

Relevant here, "'Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion … is unopposed.'" *J&J Sports Prod.*, *Inc. v. Tonita Rest.*, *LLC*, No. 5:13-CV-382-REW, 2015 WL 9462975, at *1 n.5 (E.D. Ky. Dec. 28, 2015) (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 194 (2d Cir. 2014)). Rather, the Court is obligated to "'ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed . . . .'" *Id*. At the same time, however, the court "is not required to conduct its own probing investigation of the record to discover an issue of material fact when a summary judgment motion is unopposed." *Metropolitan Life Ins. Co. v. Darkow*, No. 5:09CV02482, 2010 WL 3002032, at *3 (N.D. Ohio July 30, 2010) (citing *Guarino v. Brookfield Twp. Tr.*, 980 F.2d 399, 407 (6th Cir. 1992)). Said differently, the Court must "'carefully review the legitimacy of such an unresponded-to motion, even as it refrains from actively pursuing advocacy . . . for a silent party.'" *Id*.

## III. DISCUSSION

Extend-A-Suites and Nikon Capital, in accordance with Rule 55 of the Federal Rules of Civil Procedure submitted evidence supporting their request for damages. (*See* Doc. 22-1–Doc. 22-27). While both Extend-A-Suites and Nikon Capital brought counterclaims against the Ung Parties, damages are owed only to Extend-A-Suites, as the lessor and owner of the Property. Upon entry of judgment in Extend-A-Suites' favor, Nikon Capital will dismiss its counterclaims. (*See* Doc. 22 at 2 n.2).

As noted, the counterclaims fall into two categories—damages arising under the lease and damages for tortious interference with a contract. The Undersigned will discuss both categories of damages.

### A. Damages Arising under the Lease

Turning first to Extend-A-Suites' request for damages incurred under the Lease, the Ung Parties agreed to pay rent, taxes, and expenses from November 1, 2017, to July 31, 2018. (Doc. 22-2, § 3.01). The Ung Parties, however, failed to pay taxes or expenses and defaulted on their rent payments in March 2018. (Doc. 22 at 4; Doc. 7, ¶ 32).

Consequently, Extend-A-Suites seeks to recover damages for unpaid Lease obligations. (*See generally* Doc. 22).

#### 1. *Monthly Rent and Late Fees*

To start, Extend-A-Suites seeks to recover $150,000.00 in unpaid monthly rent and $150,000.00 in unpaid late fees. (*Id*. at 5).

The Ung Parties agreed to pay $30,000.00 per month in rent or the aggregate sum of $270,000.00 for the full term of the Lease. (Doc. 22-2, § 3.01). Failure to pay rent resulted in a late charge in the amount of one month's rent. (*Id*., §§ 3.01, 3.03). And, rent that remained unpaid

5

for more than 30 days accrued interest at a rate of 18% per annum. (*Id*.).

As noted, the Ung Parties failed to pay rent beginning in March 2018. (Doc. 7, ¶ 16). Extend-A-Suites therefore seeks to recover $300,000.00 in damages for past-due rent, late fees, and interest. (Doc. 22 at 5). Having reviewed the relevant Lease provisions, the Undersigned finds that Extend-A-Suites is entitled to these damages.

### 2. *Taxes*

Next, Extend-A-Suites seeks to recover damages for unpaid taxes, including excise taxes, sales taxes, and real estate taxes. (Doc. 22 at 5–6).

First, Extend-A-Suites seeks $26,807.69 in excise taxes and $23,417.30 in sales taxes, both pro-rated through March 16, 2018, when it terminated the Lease. (*See id*.). Under Section 6.01(c) of the Lease, the Ung Parties agreed to pay all taxes and charges imposed upon the conduct of their business in the Property and all property taxes imposed upon its fixtures, equipment, and other personal property. (Doc. 22-2, § 6.01(c)). In support, Extend-A-Suites provides copies of City of Columbus Hotel/Motel Monthly Return of Hotel Tax ("H-1") forms documenting excise and sales taxes owed on the Property during the term of the Lease. (Doc. 22-6). The Undersigned has inspected these forms and finds that they support Extend-A-Suites' request for $26,807.69 in excise taxes and $23,417.30 in sales taxes.

Second, Extend-A-Suites seeks $23,151.00 in real estate taxes, prorated through mid-March. (Doc. 22 at 6). Under Section 6.01(a) of the Lease, the Ung Parties were obligated to pay an amount equal to 1/12th of the annual real property taxes for the Property. (Doc. 22-2, § 6.01(a)). To support its request, Extend-A-Suites provides copies of Franklin County real estate taxes owed for the second half of 2017, as well as a delinquent real estate tax notice issued to Extend-A-Suites. (Doc. 22-7). Upon review, the Undersigned concludes that Extend-A-Suites' documentation

supports its request for $23,151.00 in real estate taxes.

### 3. *Expenses*

Extend-A-Suites also seeks damages for unpaid expenses. (Doc. 22 at 6). The Ung Parties entered into a "triple net" lease with Extend-A-Suites meaning that they agreed to pay all property-related expenses, including, for example, utilities, maintenance, alterations, and improvements. (Doc. 22-2, § 3.05).

First, Extend-A-Suites requests $53,642.46 in unpaid utility services, prorated through the date it terminated the Lease. (Doc. 22 at 6). It provides the following breakdown of expenses and supporting documentation for the relevant Lease term:

- phone services: $4,125.60
  - Chase Bank statements detailing Extend-A-Suites' payments to AT&T (Doc. 22-9)
- water /sewer services: $10,954.27
  - copy of Extend-A-Suites' check to the City of Columbus for sewer/water services (Doc. 22-10);
- Gas: $2,232.00
  - Columbia Gas invoices (Doc. 22-12)
- Cable/Data: $4,805.44
  - payment confirmations documenting Extend-A-Suites' payments to DIRECTTV (Doc. 22-13)

(Doc. 22 at 6).

Second, Extend-A-Suites seeks $81,644.12 in unpaid "triple net" expenses. (Doc. 22 at 6–7). It provides the following breakdown of expenses and supporting documentation for the relevant Lease term:

- Abco Fire Protection Services: $6,984.33
  - Chase Bank statements documenting Extend-A-Suites' payments to Abco Fire Protection (Doc. 22-9)
- Acculock: $2,174.95
  - Chase Bank statements and Acculock invoices detailing Extend-A-Suites' payments to Acculock, a hotel/motel lock parts and repair company (Doc. 22-9; Doc. 22-14)
- AVM Enterprises: $6,048.98

7

- o Chase Bank statements and AVM Enterprises invoices for miscellaneous hotel supplies, including, for example, box spring covers, shampoo bottles, plastic cups, towels, sheets, and other common hotel supplies (Doc. 22-9; Doc. 22-15)
- Benrich Service Company: $756.27
  - o invoices for various services, including, for example, boiler maintenance in January 2018 (Doc. 22-16)
- Booking.com: $3,639.29
  - o Chase Bank statements documenting Extend-A-Suites' payments to booking.com (Doc. 22-9)
- Easy Ice: $468.70
  - o Chase Bank statements detailing Extend a Suites' payments to Easy Ice (Doc. 22-9)
- Ethostream: $1,687.50
  - o invoices for data streaming services (Doc. 22-17)
- Expedia: $3,297.43
  - o Chase Bank statements detailing Extend-A-Suites' payments to Expedia (Doc. 22-9)
- Guardians Security: $14,206.50
  - o invoices for security services (Doc. 22-18)
- KMC Snow and Ice Management: $16,175.00
  - o invoices for salting and snow removal services on the Property (Doc. 22-9)
- Ohio Exterminating Co.: $2,000.64
  - o invoices for extermination services (Doc. 22-27)
- Oracle Elevator Company: $1,573.60
  - o invoices for maintenance and repair services (Doc. 22-20)
- Ohio Board of Workers' Compensation: $3,147.41
  - o invoices for relevant policy period (Doc. 22-21)
- Patrol Services International: $8,668.80
  - o invoices for security services (Doc. 22-22)
- Personnel Concepts: $329.84
  - o invoices for miscellaneous compliance services and products
- PTAC USA: $5,424.00
  - o invoice for air conditioner (Doc. 22-24)
- Republic Services: $1,035.88
  - o payment confirmation to Republic Services for waste disposal and trash removal services (Doc. 22-25)
- RichRooms.com: $4,025.00
  - o purchase agreement with RichRooms.com for 30 televisions and shipping costs (Doc. 22-26)

(Doc. 22 at 6–7).

Upon review, the Undersigned is satisfied with Extend-A-Suites' documentation and concludes that it supports a damages award of $53,642.46 for unpaid utility expenses and

$81,644.12 for "triple net" expenses.

### *4. Attorneys' Fees*

Finally, Extend-A-Suites seeks $17,172.50 in attorneys' fees. (Doc. 22 at 5). The Lease provides for attorneys' fees in the event of default:

> In the event the Landlord should consult with or employ the services of legal counsel or bring suit against Tenant for any default or enforcement of any terms of this Lease, Tenant shall be liable for all such reasonable attorneys' fees and litigation costs incurred by Landlord and the same shall be recoverable against Tenant in addition to all other amounts that Landlord may recover.

(Doc. 22-2 § 13.02(e)).

Extend-A-Suites moves to recover attorneys' fees through September 2019. (Doc. 22 at 5). In support, it attaches billing records from October 2018 to September 2019 showing a total of 127.10 hours billed at an hourly rate between $125.00 to $325.00. (Doc. 22-5). Based on these bills, it seeks to recover a total of $17,172.50 in attorneys' fees. (Doc. 22 at 5). The Undersigned finds these fees reasonable, and upon review of the terms of the Lease and the provided billing documents, concludes that Extend-A-Suites has supported its damages request of $17,172.50 in attorneys' fees.

### B. Tortious Interference Damages

In addition to damages resulting from breach of the Lease, Extend-A-Suites seeks damages for tortious interference with a contract. (Doc. 22 at 7–8). Generally speaking, it alleges that it attempted to sell the Property to a third party following the Ung Parties' default, but the Ung Parties threatened the potential buyer with litigation, thereby tarnishing the deal. (*See id.*).

To recover damages for tortious interference with a contract, the movant must establish: (1) the existence of a contract; (2) the wrongdoer's knowledge of the contract; (3) the wrongdoer's intentional procurement of the contract's breach; (4) the lack of justification; and (5) resulting

9

damages. *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 707 N.E.2d 853 (1999).

Here, the first three elements are satisfied. As for the first, the existence of a contract, Extend-A-Suites entered into a real estate purchase contract (the "Purchase Agreement") for $2,351,000 with the Lodge on Tara Blvd, LLC (the "Buyer") in August 2018. (Doc. 7, ¶ 40). In support, Extend-A-Suites attaches a copy of the Purchase Agreement. (Doc. 22-3). And, with regard to the second and third elements, the wrongdoer's knowledge of the contract and intentional conduct, Extend-A-Suites alleges that, the Ung Parties, upon learning of the Purchase Agreement, "contacted the Buyer and threatened it with litigation alleging [he] had an interest in the Property." (Doc. 7, ¶ 42). Because the Ung Parties are in default, these allegations have been deemed admitted. *See Summa W. Reserve Hosp.*, 2012 WL 1361608, at *1.

As for the fourth element, lack of justification, courts applying Ohio law balance the following:

> (1) the nature of the actor's conduct, (2) the actor's motive, (3) the interests of the party with whom the actor has interfered, (4) the interests sought to be advanced by the actor, (5) the social interests of protecting the freedom of contracting and the interference with such, (6) the proximity or remoteness of the actor's conduct to the interference, and (7) the relations between the parties.

*Super Sulky, Inc. v. U.S. Trotting Ass'n*, 174 F.3d 733, 742 (6th Cir. 1999) (interpreting Ohio law). The nature of the actor's conduct is the primary factor that courts should consider. *Id*.

Here, based on the nature of the Ung Parties' conduct, the Undersigned concludes that his actions were unjustified. Extend-A-Suites had not only a right but a duty to mitigate damages incurred under the Lease. And, it did so by timely entering into a lucrative deal mere months after terminating the Lease with the Ung Parties. (Doc. 7, ¶ 40). Yet the Ung Parties intentionally interfered with this deal by threatening litigation, and consequently, the Buyer reasonably backpedaled its offer. The Undersigned can think of no justifiable reason for this conduct, and the

Ung Parties have not provided one. Indeed, the Ung Parties' belief that they were wrongly evicted does not change the fact of their breach and does not justify their tortious interference with Extend-A-Suite's Purchase Agreement. Accordingly, the Undersigned concludes that the Ung Parties' conduct was outside of the bounds of the parties' previous business relationship and demonstrated a "motive to interfere with [Extend-A-Suite]'s business relations" in a way that was "no longer merely incidental to the breach" of the lease. *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 796 F.3d 576, 595 (6th Cir. 2015).

Finally, Extend-A-Suites has also established damages resulting from the Ung Parties' conduct. Following the Ung Parties' threat of litigation, the Buyer "amended its offer" and would agree to enter only into a lesser-valued land installment contract for $1,800,000, "due to the risk of possible legal action." (Doc. 22 at 8). Consequently, the contract's value dropped from $2,351,000 to $1,800,000 following the Ung Parties' conduct, and Extend-A-Suites therefore seeks $551,000 to recover the difference. (*Id.*).

In light of the above, the Undersigned concludes that Extend-A-Suites has established its counterclaim for tortious interference and, as a result, is entitled to $551,000 in damages.

## IV.    CONCLUSION

For the above reasons, the Undersigned **RECOMMENDS** granting Defendants' Motion for Default Judgment (Doc. 11) and Extend-A-Suites' and Nikon Capital's Motion for Summary Judgment in the amount of $1,076,835.07.

## V.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made.  Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C.  636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


IT IS SO ORDERED.


Date:   November 26, 2019                                    /s/ Kimberly A. Jolson
                                                             KIMBERLY A. JOLSON
                                                             UNITED STATES MAGISTRATE JUDGE